IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LEON MCGILL, : | |
| Plaintiff, : | |
| vs. : | Civil Action No. |
| : | **5:07-CV-181 (CAR)** |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
| Defendant. : | |

**RECOMMENDATION**

The plaintiff herein filed an application for disability insurance benefits on July 31, 2002. The Social Security Administration denied the claims initially and on reconsideration, and plaintiff requested a hearing before an Administrative Law Judge, which was held on March 10, 2005, with a supplemental hearing held on September 15, 2005. The ALJ then entered an order denying plaintiff's claim on November 21, 2005, and declined to reopen plaintiff's prior claim for benefits based upon new evidence. Plaintiff sought review of the decision before the Social Security Appeals Council. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. The plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted.

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." Cornelius, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. Ambers v. Heckler, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis,

further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ concluded that plaintiff had "severe" impairments of right eye blindness, sarcoidosis, and herniated disc at L5-S1 (status post discectomy and fusion), but that he could perform a range of sedentary work reduced by no more than occasional overhead reaching, crawling, crouching, kneeling, stooping, balancing, or climbing stairs and ramps; the avoidance of exposure to extreme cold/heat, vibrations, and hazards; the avoidance of all work that requires climbing ladders, ropes, or scaffolds; and the inability to perform any work requiring full peripheral vision (Tr. 23).

The medical evidence shows on June 19, 2000, plaintiff received a back injury while working. Dr. McMahan reported a noticeable limp, marked decreased range of motion in the lumbar-sacral spine, spasm in the right lumbar muscles, and point tenderness on the sciatic notch down the course of the sciatic nerve on the right. Straight leg raising was positive on the right. On the first day of injury, Dr. McMahan diagnosed an acute mechanical low back strain with associated sciatica, and he gave injections of Toradol, Vistaril, and Decadron. (Tr. 263). A week later on June 26, 2000, plaintiff still had problems. The injections had given relief only for a day, and he reported deep radiating pain. Laughing, coughing, and sneezing made the pain worse, as well as sitting and rising from the seated position. Dr. McMahan diagnosed low back syndrome with questionable lumbar radiculopathy/sciatica. He scheduled x-rays, an MRI, and lab tests. (Tr. 262). An undated note in Dr. McMahan's records states that the "MRI [was not] done because insurance company would not approve." (Tr. 261). On June 27, 2000, a blood test showed that

plaintiff had a high Sed Rate of 16 (normal: 0-15). (Tr. 175). A lumbar x-ray report the next day indicated mild degenerative changes at the lumbosacral interspace. (Tr. 174). On July 10, 2000, Dr. McMahan noted that plaintiff continued to have pain in the right paralumbar muscles and radiating down into the right buttock and into the posterior right leg. The diagnosis was right sided back injury with apparent low back syndrome with sciatica not relieved by conservative measures. Dr. McMahan planned an MRI and continued special positioning, heat and/or ice, and Vicodin ES. (Tr. 260).

On July 27, 2000, plaintiff had an MRI of the lumbar spine, which revealed a large disc herniation on the right at L5-S1 as well as bilateral neural foraminal encroachment at L4-5 related to annular bulging. (Tr. 177-79). On August 4, 2000, Dr. McMahan diagnosed a herniated L5-S1 disc with significant radiculopathy. He changed plaintiff's pain reliever to Tylox, and referred plaintiff to Dr. Stefanis.

On August 22, 2000, plaintiff saw Dr. George Stefanis, a neurosurgeon. Dr. Stefanis noted a slow antalgic gait and favoring the right hip and leg. Based on his review of the studies, he believed that Mr. McGill had a disc herniation at L5-S1 and foraminal encroachment at L4-5 because of disc bulging. (Tr. 327-28; 395). A lumbar myelogram on August 28, 2000, showed: "Mass effect in the right S1 nerve root sheath consistent with the appearance on the CT lumbar myelogram where a small focal disc herniation abuts the descending right S1 sheath." (Tr. 317). The CT scan that followed showed: "Mild disc bulge at L4-5. Central and right HNP [herniated nucleus pulposus] at L5-S1 abuts the descending right S1 nerve root sheath and possibly the exiting L5 nerve root." (Tr. 318). A microscopic discectomy was planned for October 6, 2000. (Tr. 306-07; 310-11). However, a routine chest x-ray on October 3, 2000, showed "bilateral

4

hilar and mediastinal lymphadenopathy" (Tr. 308), and surgery was postponed.

In August of 2002, plaintiff underwent a microdiscectomy at L5-S1, which failed to provide him with significant relief from discomfort. Consequently, plaintiff underwent a second surgery in July 2003, an L5-S1 fusion. The ALJ noted that subsequent records from treating and examining sources established that the plaintiff felt much better with only occasional low back pain and no leg pain. Plaintiff's treating orthopedist, Dr. Barnes, opined in January of 2004 that there was no need for further follow-up. (Doc. 21). Plaintiff's treating neurosurgeon, Dr. Stefanis, released plaintiff to return to work that did not require lifting more than 20 pounds at a time.

Plaintiff underwent a consultative orthopedic evaluation performed by Dr. Fried on June 6, 2005. Dr. Fried opined that plaintiff could lift or carry up to 10 pounds on occasion and push/pull no more than 20 pounds on the right leg. He further opined the plaintiff could sit up to 6 hours and stand/walk up to 4 hours combined in an 8-hour day. Plaintiff was limited to no more than occasional balancing, stooping, crouching, kneeling, crawling, or bilateral overhead reaching, and should avoid all exposure to dust, fumes, temperature extremes, hazards, vibration, and work on ladders, ropes, and scaffolds. (Tr. 22).

*Duration*

Plaintiff argues that the ALJ committed error in failing to find that plaintiff met the 12 month duration requirement. Plaintiff must show that either his impairment is expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 416.909 (emphasis supplied). The Commissioner notes that some of the medical evidence of record relates to the time period

prior to July 2001. Plaintiff was previously found not disabled during this time frame and that time period cannot be re- adjudicated now. Thus, the ALJ considered only the period between September 17, 2001 (the date of the last denial on reconsideration of the prior application) and December 31, 2003, his date last insured (17-18).

The ALJ found that plaintiff was disabled from work for a period of time after his second surgery, from July 2003 through January 2004, and for a period of at least three months after his first surgery, in August of 2002, but that plaintiff had not been disabled from work for a continuous 12 month period of time. (Tr. 22). Plaintiff does not show anything in the record that would preclude that finding.

This determination was based upon substantial evidence.

*Credibility*

Plaintiff asserts that the ALJ improperly discounted his complaints of disabling pain and other symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.1991), requires that an ALJ apply a three part "pain standard" when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.

20 C.F.R. S 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of

6

disability. Foote v. Chater, 67 F.3d 1553,1560-1561 (11th Cir. 1995).

A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. Holt v. Sullivan, supra at page 1223; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir.1987). Where the claimant's testimony is critical, the fact finder must articulate specific reasons for questioning a claimant's credibility. "[D]isregard of such complaints without articulating the reason is inappropriate because it deprives the reviewing court of the ability to determine the validity of that action. When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision." Caulder v. Bowen, 791 F.2d 872, 880 (11th Cir.1986).

The Commissioner is entitled to "consider whether there are any inconsistencies in the evidence, and the extent to which there are any conflicts between [plaintiff's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In making a credibility evaluation, the Commissioner considers objective medical evidence and information from the Plaintiff and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating or aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. See 20 C.F.R. § 404.1529(c)(2)&(3), 416.929(c)(2) & (3).

This determination is a question of fact: like all factual findings by the Commissioner, it is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence. See Hand v. Heckler, 761 F.2d 1545, 1548-1549 (11th Cir. 1985). It is the function of the Commissioner, and not the court, to pass on the credibility of witnesses. Cartwright v. Heckler, 735 F.2d 1289, 1290 (11th Cir. 1984).

The ALJ discussed her obligation to consider all of plaintiff's symptoms, including pain, and then discussed at length both plaintiff's testimony and the medical evidence (Tr. 19-22). Furthermore, the ALJ found it significant that no treating, examining, or non-examining physician has placed any limitations on the plaintiff that were greater than the ones ultimately found by the ALJ. (Tr. 22).

The record as a whole provides substantial evidence for the ALJ's finding that plaintiff was not as limited as he alleged in his testimony.

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence, it is the RECOMMENDATION of the undersigned that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable C. Ashley Royal, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 12th day of August, 2008.

//S Richard L. Hodge
RICHARD L. HODGE
msd UNITED STATES MAGISTRATE JUDGE